AUSTIN G. DAY *vs.* THE POSTAL TELEGRAPH COM-
PANY OF BALTIMORE CITY.  J. H. BUNNELL & CO.
*vs.* SAME.  AUSTIN G. DAY, and SAMUEL SNOWDEN
and GEORGE W. DOBBIN, Receivers *vs.* SAME.

*Consolidation of Cases—Receiver—State Comity—Affairs of
an Insolvent company placed in the hands of Receiver—
Right of Foreign Telegraph Companies to Hold property
and Conduct their Business in this State—Assets of a For-
eign· Corporation within the Jurisdiction of the State of
Maryland—Creditors of such Foreign Corporation—Ap-
peal.*

It is error to consolidate two cases brought by different parties
against the same defendant, where the objects, sought to be accom-
plished by the separate bills, would conflict the one with the other.

A receiver appointed by the Supreme Court of New York has no
extra-territorial power to institute proceedings in the Courts of
this State, in regard to property not subject to the jurisdiction of
the Court from which he received his appointment.  The principles
of State comity do not apply to such a case.

Where the affairs of an insolvent company have been placed in the
hands of a receiver appointed by a Court having jurisdiction of
the subject-matter, nothing can be done whereby the *status* of the
affairs of that company can be effectually changed, or its rights in
any way lessened or prejudiced, without the sanction of the Court.

A receiver is but the officer or agent of the Court from which he
derives his appointment, and his possession is exclusively the
possession of the Court; the property being regarded as in the
custody of the law, for the benefit of whoever may be ultimately
determined to be entitled to its possession.

No third party can interfere with the possession of the receiver, with-
out leave of the Court, whether such party claims paramount to or
under the right which the receiver was appointed to protect.

Day, *et al. vs.* Postal Telegraph Co. of Baltimore City.

Foreign corporations, and especially telegraph companies, may do business within this State, and can acquire and hold the necessary property in the State to enable them to prosecute and conduct their business. And may hold such property in their own names, or in the name of an auxiliary local corporation organized for the purpose.

A New York corporation being hopelessly insolvent, its creditors may avail themselves of any assets that may be found within the jurisdiction of this State, and a Court of equity will, regardless of any mere forms or covers, exercise its powers for protecting, and making available such assets for their benefit.

No appeal will lie from an order dismissing the petition of receivers for the reason that the matter thereof had been disposed of by a previous decree of the Court.

APPEALS from the Circuit Court of Baltimore City.

The first and second appeal in this case were taken from the final decree of the Court below, of the 2nd of January, 1886, dismissing the original and amended bills as against The Postal Telegraph Company of Baltimore City, and directing the receivers in the proceedings mentioned, to surrender the possession of the property of said company, consisting of telegraph lines, wires and poles within the State of Maryland, to said company or its manager. The third appeal was taken from the order of the 2nd of February, 1886, dismissing the petition and supplemental petition of the receivers George W. Dobbin and Samuel Snowden. The petition of George W. Dobbin and Samuel Snowden, two of the receivers of The Postal Telegraph and Cable Company, filed on the 1st of December, 1885, prayed that the papers in the case might be referred to one of the auditors of the Court to state an account of the money due and owing from The Postal Telegraph Company of Baltimore City to them, as receivers of the Postal Telegraph and Cable Company, for advances made to it for the construction of its lines.; that a commission might issue to the State of New York to take testimony in rela-

tion to their claim; that the delivery of possession of the property to The Postal Telegraph Company of Baltimore City, might be postponed until the statement of said account and return thereof to the Circuit Court; and that The Postal Telegraph Company might be required to pay to the petitioners such sum of money as might be ascertained to be due and owing before possession of said property was delivered to it by the petitioners, and in default of such payment that the property might be sold, and the proceeds thereof might be applied to the payment of the claim of the petitioners so far as might be necessary, and the balance paid over to The Postal Telegraph Company of Baltimore City. On the 23rd of December, 1885, the petitioners filed a supplemental petition in which they charged that the obligations alleged to have been given by The Postal Telegraph Company of Baltimore City, to The Postal Telegraph and Cable Company, were not delivered to the latter company, if ever given at all, until after the appointment of the receivers of the said company. The Court (FISHER, J.,) on the 2nd of February, 1886, passed an order dismissing these petitions for the reason that the property mentioned therein, had on the 2nd January past, been decreed to be delivered to the Maryland corporation. The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Samuel Snowden,* and *Francis P. Stevens,* for the appellants.

*T. Wallis Blakistone,* and *John H. Thomas,* for the appellee.

The money advanced by the New York corporation, having been by way of loan, under the agreement that the title to the property was to be in the appellee, the

Court would have enforced that agreement, even if the New York Company had taken the title in its own name. *Dryden vs. Hanway*, 31 *Md.*, 254.

Courts never presume a trust, unless necessary to carry out an agreement between the parties.   *Frazier vs. Gelston*, 35 *Md.*, 311.

A trust is never implied which would be at variance with the express agreement or understanding of the parties.   *West vs. Flannigan*, 4 *Md.*, 56.

Contracts are never implied, which are inconsistent with express ones.   *Stockett vs. Watkins*, 2 *G. & J.*, 341.

The contract between the New York corporation and the appellee having been that the appellee should own, and the New York corporation lease the property in question, it would be a violation of these principles, and subversive of the understanding between the parties for the Court to treat the appellee's title as in trust for the New York Company.

A resulting trust never arises from the loaning of money to pay, or to assist in paying, the purchase money; is never established, unless the agreement was that the property should be bought for and in the name of the party who claims to be the *cestui que trust*.   *Hollida vs. Shoop*, 4 *Md.*, 474–5 ; *Six vs. Shaner and Wife*, 26 *Md.*, 444–5.

If the property was intended to belong to or to be held in trust for the New York corporation, it was for the purpose of evading the laws of Maryland; of procuring for a foreign corporation privileges, not sanctioned by, but in opposition to the policy of those laws.

Courts do not imply and establish trusts intended for or calculated to produce such results.   2 *Story's Eq. Jur.*, sec. 1201 *b ; Cutler vs. Tuttle*, 4 *C. E. Green*, (*N. J.*,) 562; *Miller vs. Davis*, 50 *Missouri*, 572, 573.

ALVEY, C. J., delivered the opinion of the Court.

On the 30th of May, 1885, Austin G. Day, the appellant on this appeal, filed in the Circuit Court of Baltimore

City, a general creditors' bill against The Postal Telegraph and Cable Company, and The Postal Telegraph Company of Baltimore City. Both companies have been duly incorporated, the former under the laws of the State of New York, and the latter under the general incorporation law of this State. As the titles indicate, these companies were incorporated as telegraph companies, with powers to construct and maintain lines of telegraph, and to do a general telegraph business. The New York Company was formed several years ago for constructing and operating telegraph lines within the United States, with its principal office in the City of New York, and the Maryland Company was subsequently formed in 1883, professedly for the purpose of constructing and operating telegraph lines within this State.

The appellant alleges himself to be creditor of the New York Company to a considerable amount; and he also alleges that said company is hopelessly insolvent and that its affairs have been placed in the hands of receivers by a Court of competent jurisdiction in New York. And in the original bill filed, the appellant alleged that the telegraph property in Maryland, which was in the possession of and being operated by the New York Company, such as right of way, poles, wires, &c., was in the Maryland Company, and that such property had been leased by the latter company to the New York Company; and that the New York Company was the owner of all the instruments and material used in operating the telegraph lines, and paid all the operatives and employés, and received and applied all the revenues and profits derived from the operation of said lines. Upon these and other allegations contained in the original bill, the appellant prayed for the appointment of a receiver of the property and effects of both companies found in this State, and for an injunction to restrain the companies, and their agents, and the receivers of the New York Court, from interfering with

the property or receiving and disposing of the revenues and profits derived from the Maryland telegraph lines; and that the property be sold for the payment of debts.

But a few days after this bill was filed, another bill was filed in the same Court, by A. B. Chandler, in his character simply as receiver of the The Postal Telegraph and Cable Company (deriving his appointment and authority from the Supreme Court of New York,) against that company as defendant. In this bill it is charged, upon the oath of the plaintiff, that the defendant company, in accordance with the purpose of its organization, constructed lines of telegraph within the States of New York, Illinois, Ohio, Missouri, and the District of Columbia, and caused corporations to be organized within the States of New Jersey, Pennsylvania, Indiana and Maryland, under the laws of those States, for the purpose of constructing and operating lines of telegraph therein: That the corporations organized under the laws of the last named States, constructed and acquired lines of telegraph in those States respectively, which lines were connected with and made part of the general telegraph system of the defendant company: That such corporations so organized in the States named, are controlled by the defendant company, and that the stock therein is held almost entirely by the defendant company, or in its interest: That the lines of telegraph constructed by the defendant company, and those acquired or constructed by the corporations organized as stated, are operated together and comprise the telegraph system of the defendant company. The bill then charges that this company is largely indebted, and is utterly insolvent, and that the value of its property largely depends upon its being kept together and intact, so as to be operated as an entire system under one management. It then prays that the receivership created by the appointment of the Supreme Court of New York be extended over the property within the jurisdiction of this

State; and that an injunction be issued to restrain all persons from interfering with the property and effects of the defendant company.

A short time after this bill was filed, that is to say, on the 17th of June, 1885, and before answer was filed, the Court below, by order, consolidated the cases made by the two bills to which we have referred, and directed that such cases be proceeded in as one case. It thereupon rescinded previous orders passed upon the bills separately, and appointed the Hon. Geo. W. Dobbin, Samuel Snowden and Samuel D. Sprigg, receivers, with power and authority to take charge and possession of all the property and effects of both companies, and to collect all debts, revenue, &c.

In passing, it is proper to observe, that there was error in consolidating the bill filed by the receiver with that filed by the appellant, and thus making one case of bills that sought to accomplish objects that would conflict the one with the other. Moreover, the receiver appointed by the Court of New York had no extra-territorial power to institute proceedings in the Courts of this State, in regard to property not subject to the jurisdiction of the Court from which he received his appointment. His functions and powers, for purposes of litigation, are held to be limited to the Courts of the State within which he was appointed, and the principles of comity between the States do not apply to a case like the present. *Bartlett vs. Wilbur*, 53 *Md.*, 485; *Booth vs. Clark*, 17 *How.*, 322, 338; *High on Rec.*, sec. 239. Whatever exceptions may exist in certain cases to the general rule, it is clear that a case like the present does not fall within any of them; for here, to entertain the bill of the receiver and grant the relief prayed by it, would likely, if not certainly, interfere with the exercise of the jurisdiction of the Court previously invoked, in regard to the same subject-matter. The bill by the receiver, therefore, should have been dismissed; or if not dismissed, should have been simply retained by the

Court to await the final determination of the rights of the parties under the prior suit instituted by the appellant, for the benefit of all the creditors of the foreign insolvent corporation.

After the order of consolidation and the appointment of receivers, as just stated, upon the coming in of the answer of The Postal Telegraph Company of Baltimore City, the Court, by its order of the 23rd of Sept., 1885, dissolved the injunction and discharged the receivers as to that company, but continued the receivers as to the New York Company; and they continued to hold possession of all the property that had come into their hands, as property belonging to the New York Company, or which was liable for its debts. The appellant then obtained leave to amend his bill; and in the amended bill filed by him, after stating the substance of his original bill and the proceedings thereon, he proceeds to charge, that since the filing of his original bill he has discovered, and so charges, that the title to the property mentioned in the proceedings was not vested in The Postal Telegraph Company of Baltimore City, and therefore it was not leased by it to The Postal Telegraph and Cable Company, as charged by mistake in his original bill; but that said property, consisting of all the right of way, telegraph poles, and wires, and all the instruments, &c., in this State, which were or had been in possession of The Postal Telegraph and Cable Company, belongs to and is the sole property of that company, and therefore subject to the possession and control of the receivers previously appointed. That The Postal Telegraph and Cable Company furnished the money to pay for all of said property, and the same was in fact paid for by it: That no part of the money was furnished by The Postal Telegraph Company of Baltimore City; and that even if any title to any part of said property ever did vest in that company, it has no beneficial interest therein, but holds the same for The Postal Telegraph and Cable Company. He then charges

that the value of the property is about $75,000. He also charges that The Postal Telegraph and Cable Company has always had all of said property in its possession, until the appointment of the receivers, and has had the complete management and control thereof. He charges, moreover, that The Postal Telegraph Company, of Baltimore, has no property of its own; but that since the insolvency of the New York Company, The Postal Telegraph Company of Baltimore City has attempted to reorganize with a view of setting up a claim of ownership to the property now in the hands of the receivers. He then prays an injunction against the Maryland company to restrain it from interfering with or making claim to the property.

The Postal Telegraph Company of Baltimore City, by its answer filed on the 13th of October, 1885, to the amended bill, denies by simple negation the several allegations which we have recited from the amended bill, and then states its claim to the property thus: "That the legal title to and beneficial interest in the aforesaid property, consisting of all the telegraph wires and poles, and the right of way for the same in Maryland, and claimed by the plaintiff to be the property of The Postal Telegraph and Cable Company, is in this respondent, as an independent corporation of Maryland. That as its own funds were insufficient for the building and constructing of its lines, or the completion of the construction thereof, it paid for the same by *issuing its obligations therefor.* That said lines and property have only been in the possession of The Postal Telegraph and Cable Company for use under an agreement, whereby that company undertook to operate the same as part of its telegraphic system, without loss to the respondent or injury to its property, and to lease the necessary offices, employ and pay the necessary operators and workmen, and furnish the necessary instruments, blanks and office furniture, &c., necessary for the purpose. That said agreement was terminable at the pleasure of either

party, and that the same has been *recently terminated.*"
It also denies "that there has been any attempt to reorganize the company, and avers, that from the date of its incorporation it has been exercising its legal powers under its charter;" and that the claim made is but the assertion of its legal and equitable right to the possession of its own property, now held by the receivers in these proceedings." It therefore prayed that the receivers be ordered to deliver up the property held by them.

We have thus stated fully, and at much greater length than is ordinarily done in an opinion, the opposing allegations of the parties, in order that the precise nature and extent of their respective claims and pretensions may be made apparent in the very involved condition of the proceedings. It does not appear from the record whether the New York Company ever answered either the original or amended bill, and we infer from the proceedings that it never appeared in the cause as defendant. There is nothing therefore to show the position or claim of that company with respect to the property in question, except the allegations of the bill filed by the New York receiver.

There was a large mass of proof produced, at the various stages of the proceedings, and by the final decree of the Court below both the original and amended bills were dismissed, as against The Postal Telegraph Company of Baltimore City, and the property was ordered to be delivered up to that company or its agent. It is from that decree that these appeals have been taken.

Much of the proof is far from being satisfactory; but there are some facts disclosed in the record about which there can be no serious controversy. That The Postal Telegraph Company of Baltimore City was formed at the instance and by the procurement of The Postal Telegraph and Cable Company, admits of no doubt. And it is equally free of doubt that the Maryland company was formed for the purpose, and with that distinct understanding on the part

of those engaged in its organization, of acting as a mere auxiliary organization to the New York company. Indeed, Armstrong, who, from the organization of the Maryland company to the time of the decree appealed from, was its president, states in his testimony that in the organization he acted for the New York company. He says, "I was in the employ of the construction department of The Postal Telegraph and Cable Company, and it was during that employment that I organized this (the Maryland) company. I was paid for my services by The Postal Telegraph and Cable Company." Mr. Cummins, who was one of the organizers and directors of the Maryland company, was, at the time, Vice-President and general manager of the New York company. And it is proved beyond doubt that all the money for the construction of the telegraph lines in Maryland, including payments for the right of way, if any was in fact paid for right of way, was furnished by the New York company, and the construction of the lines was under the direction and supervision of the agents of that company. Indeed, the certificate of incorporation of the Maryland company bears intrinsic evidence of the fact that the company was not designed to have stock with which to raise capital for the construction of telegraph lines or acquire other property. The capital stock was merely nominal, being $500 only. This capital stock was divided into five shares, of a hundred dollars each; and of the five directors named in the certificate, the three resident directors were each furnished by the New York company, according to their testimony, with the $100 to pay his subscription. This was simply to capacitate the parties to act as directors. It would appear that the two New York directors paid nothing for the stock that was allotted to them. After the organization of the local company, the resident directors took little or no interest in the management of its affairs, and attached no interest to the stock held in it; but left

everything to the control and management of the agents appointed by the New York company. It appears that the telegraph lines in Maryland were constructed at a cost of about $75,000; but it does not appear that there was any negotiation for this large sum with which to construct telegraph lines, nor is there any evidence, furnished by the proceedings of the local company, to show that the lines of telegraph were constructed on account of that company. On the contrary, the evidence points conclusively to the fact, that the telegraph lines, with everything appurtenant thereto, were constructed for and on account of the New York company exclusively. And the subsequent user and management of the property consist with no other supposition. From the time of the construction of the lines to the time of their going into the hands of the receivers, they were in the full and complete possession of the New York company; and it does not appear that that company ever kept any account with the Maryland company, for money expended for, or for money advanced to it; but received and appropriated all the revenues derived from the operation of the lines in this State, as from its own property. It would seem, from the facts of the case, that it was not until this latter company became embarrassed, indeed hopelessly insolvent, that an arrangement was made, whereby the telegraph property in Maryland should be turned over to the Maryland company. This, of course, if legally done, would have the operation of withdrawing the telegraph property from the reach of the creditors of the insolvent foreign corporation, unless the Maryland company can be made to pay and reimburse the New York company all the money expended in the acquisition of the property in question.

The contention of the Maryland company is, that the telegraph lines, while in fact constructed by the New York company, were constructed and used under an agreement,

whereby the New York company undertook to operate the lines, as part of its system of telegraph, without loss or injury to the property, and that such agreement was terminable at the pleasure of either party, and that the same has been terminated since the property was placed in the hands of the receivers, and but recently before the case was decided by the Court below. But by what authority that agreement was made, or when made, except that it is said to have been made between Armstrong and Cummins, both of whom were officers in the Maryland company, is not disclosed; nor have we anything more than the bare statement that there was such an agreement. There is nothing produced to evidence the action of the board of directors of either company, in regard to such contract; and that a matter of such importance should have been dealt with so loosely, is almost beyond the bounds of credence. That the New York company should have expended $75,000 in the construction of telegraph lines, as a part of its own system, for a corporation only in name, without any capital, and wholly irresponsible, and agree to hold and use those lines simply at the will and pleasure of such irresponsible corporation, and that too without any well authenticated contract, by which it could be secured, is, if true, one of those remarkable transactions, fortunately, that seldom occur among business men. It is alleged in the answer that the agreement for operation of the lines was to subsist until terminated at the election of *either* party; but Armstrong, in his testimony, states that it was to subsist "until such time as the parties should elect to terminate it." Indeed, there is nothing definite in regard to it; and a party who sets up an agreement in an affair of such large consequence, should be, and is, required to establish, by clear and definite proof, not only the authority for making the agreement, but its specific terms and conditions.

But it is said that the Maryland company issued its obligations for the money expended by the New York

company in the construction of the lines of telegraph in Maryland. It is true, Armstrong, the president of the Maryland corporation, does say, that that company gave to the New York company its obligations for the payment of the money expended. He seems, however, to be studious to withhold all information in regard to the circumstances under which the obligations were issued,—when issued, and to whom delivered, and the nature and amount of such obligations. Whether they were issued by the authority of the company, in such form as to bind it, and whether before or after the affairs of the New York company were placed in the hands of receivers, there is not the slightest evidence to show. All that he says is, that such obligations were issued, he *thinks*, early in the Spring of 1885; "I cannot," he says, "be more explicit in what way." This important transaction occurred, if at all, according to the testimony of this witness, only a few months before he was examined, and yet he seems to know but little about it, notwithstanding he was president of the company, and should have had full knowledge upon the subject. There ought to have been, certainly, no difficulty in the proof of such a transaction as that spoken of by the witness ; but there does not seem to be the slightest entry or written memorandum to be found in regard to it. The witness says he has not the books of the company in his possession, and he does not know where they can be found. Indeed, from the evidence in the case, it is even doubtful whether any regular books of the affairs of the company were ever kept. From evidence so indefinite, no certain or reliable conclusion can be drawn.

But whatever may have been the purposes and designs of the parties professing to represent these companies in the transactions between them, it is very clear, upon most unquestionable authority, that after the affairs of the New York company had been placed in the hands of receivers by the Supreme Court of New York, which was on the 3rd

of May, 1885, and so likewise after receivers had been appointed by the Court in this State, nothing could be done whereby the *status* of the affairs of that company could be effectually changed, or its rights in any way lessened or prejudiced, without the sanction of the Court having jurisdiction of the subject-matter. Any person relying upon such transaction for his protection, must show that what was done was done with the sanction of the Court. The receiver is but the officer or agent of the Court from which he derives his appointment, and his possession is exclusively the possession of the Court; the property being regarded as in the custody of the law, *in gremio legis*, for the benefit of whoever may be ultimately determined to be entitled to its possession. *High on Rec., secs.* 134, 139. And this strict rule forbidding the interference of a third party with the possession of the receiver, without leave of the Court, applies without regard to the fact, whether such party claims paramount to or under the right which the receiver was appointed to protect. *High on Rec., sec.* 139; *Evelyn vs. Lewis,* 3 *Hare,* 472.

In the case of *De Winton vs. Mayor of Brecon,* 28 *Beav.,* 203, Lord ROMILLY, M. R., in speaking upon this subject, said : " I apprehend this is clear, that the Court never allows any person to interfere, either with money or property in the hands of its receiver, without its leave; whether it is done by the consent or submission of the receiver, or by compulsory process against him. The Court is obliged to keep a strict hand over property in the hands of a receiver, or which, by virtue of the order of the Court, may come into his hands, in order to preserve entire jurisdiction over the whole matter, and to do that which is just in the cause between the parties."

When, therefore, on the 25th of Sept., 1885, the board of directors of the Maryland company, by resolutions, and the New York receivers, by letter dated the 26th of Sept., 1885, undertook to terminate or annul what was alleged

to be the agreement for operating the telegraph lines in Maryland, and to surrender all the property to the Maryland corporation, that property was all in the hands of the Maryland receivers, and therefore in the possession and under the control of the Court. The receivers appointed by the Court in New York had no extra-territorial power over the property in this State, and therefore had no power to surrender the property situated here to the Maryland company. And the latter company, being a party to this suit and engaged in contesting the right to the property, could in no effectual way, by contract or agreement with the foreign receivers, acquire any right to the possession of the property, as against the Maryland receivers. The property, therefore, must be taken to stand now, notwithstanding the attempt to change the relation of the parties to it, as it stood at the time of filing the bill by the appellant. *Wiswall vs. Sampson,* 14 *How.,* 66; *Barton vs. Barbour,* 104 *U. S.,* 120. And as at that time the New York company was in the full and complete possession of all the property in question, using and treating it as its own, that property still remains subject to the same rights as then existed, unaffected by anything that has since occurred.

It has been argued for the appellee, that to allow corporations to be organized under our general incorporation law, to become mere auxiliary organizations and agencies for foreign corporations that may desire to do business in the State, would contravene the policy and objects of our law. But in this we do not concur. We know of no policy of the State, provided every thing be fair, that would be contravened. The general incorporation law provides that foreign corporations, and especially telegraph companies, may do business within this State; and of course, they are allowed to acquire and hold the necessary property in the State to enable them to prosecute and conduct their business. Whether they hold their property in their own

24                    v. 66.

Day, *et al. vs.* Postal Telegraph Co. of Baltimore City.

names, or that of auxiliary local corporations organized for the purpose, is a matter of convenience or policy that the corporations determine for themselves. It is clearly not a matter that can be availed of as a defence in a case like the present.

Without further notice of the grounds of defence urged in the argument, this Court, in view of all the facts disclosed by the record, entertain no doubt as to the equity and right of the matter. The New York corporation being hopelessly insolvent, it is the right of its creditors to avail themselves of any assets that may be found within the jurisdiction of this State; and a Court of equity will, regardless of any mere forms or covers, exercise its powers for protecting and making available such assets for the benefit of creditors. The property in question was constructed with the means and for the use of The Postal Telegraph and Cable Company, and The Postal Telegraph Company of Baltimore City has no real or substantial interest in it as owner. The property therefore should be devoted to the payment of the debts of its real owner, the New York corporation; and to that end, the property should be sold by the receivers. If there should be a surplus of the proceeds of sale, after the payment of such debts as may be established, that surplus may be paid over to the New York receivers, upon exhibition of due authority to receive it. We shall therefore reverse the decree of the Court below and remand the cause that a decree may be passed in accordance with this opinion.

The appeal taken from the order of the 2nd of Feb., 1886, dismissing the petition filed by the receivers, must be dismissed. No such matter is decided by the order as will entitle either the plaintiff in the cause, or the receivers to appeal to this Court. *High on Rec., sec.* 174.

> *Decree reversed and*
> *cause remanded; and*
> *appeal of plaintiff and receivers dismissed.*