# BARLEY *v.* GITTINGS.

EQUITY ; RECEIVERS ; COMITY ; FOREIGN CORPORATIONS ; STOCK-
HOLDERS.

1. A court of equity has the power to appoint a receiver before the
   defendant has been served with process, but such power will
   only be exercised in a case of emergency.
2. Upon the ground of comity, a foreign receiver may be permitted
   to sue or to intervene in a suit in this District, but his recog-
   nition by our courts is a privilege and not a right.
3. Whether a foreign receiver, under the rule of comity, can be
   permitted, upon his intervening in a suit here, to question the
   power of our courts to appoint a receiver of assets of a for-
   eign corporation in this District, *quaere.*
4. Sec. 34 of the act of Congress of October 1, 1890 (26 Stat. 625),
   providing for the incorporation of a certain class of corpora-
   tions in this District, can not properly be construed to pro-
   hibit the appointment of receivers of property situated here
   belonging to non-resident corporations and individuals, when
   such appointment is authorized by the ordinary practice of
   courts of equity and is required for the protection of creditors
   and others.
5. *Quaere,* whether the rule that a stockholder of a foreign corpora-
   tion can not maintain a suit in this District involving an inquiry
   into the internal administration of its affairs or the winding
   up of its business, applies to the case of a corporation which
   for purposes of convenience or some ulterior purpose was
   incorporated elsewhere and then immediately migrated here,
   where it perfected its organization, located and maintained
   its principal office and carried on its corporate and other busi-
   ness, and kept its money, books, papers and records.
6. The complainants in a bill against such a corporation, incor-
   porated in Virginia as a building and loan association, for an
   injunction, appointment of a receiver and distribution of
   assets, *held,* construing its by-laws, not to be stockholders, but
   creditors, and as such entitled to maintain their suit here.
7. In such a case, if after the collection and sale of the assets of the
   corporation in this District, the payment of expenses and the
   distribution of the proceeds among all intervening creditors,
   resident and non-resident, a balance remains, such balance

may, in the discretion of the court appointing the receiver here, be delivered to an intervening foreign receiver.

No. 905.   Submitted October 11, 1899.   Decided December 5, 1899.

HEARING on an appeal by the receiver of a foreign corporation appointed in the State where the corporation was incorporated, from an order of the Supreme Court of the District of Columbia, dismissing his petition filed in a suit in equity in this District, in which receivers of the corporation had been appointed here.   By his petition the petitioner asked the court to compel the local receivers to deliver to him the assets collected by them, in order that the affairs of the corporation might be administered in the State where it was incorporated.   *Reversed.*

The COURT in its opinion stated the case as follows :

1. On March 16, 1899, Lorenzo S. Dove, a resident of the District of Columbia, joined by other residents therein and in the State of Maryland, filed a bill in the Supreme Court of said District against the Continental Savings and Loan Company alleging in substance:

(1) That the defendant is a corporation organized under the laws of Virginia.   An exhibit copy of the charter shows that it was approved and issued by order of the Corporation Court of the city of Alexandria on December 26, 1894, with the ordinary powers of a building and loan association, and an authorized capital stock of not less than $8,000, nor more than $160,000, divided into shares of $50 and $100 each.   The sixth article reads thus :

" The principal office of the company shall be in the city of Alexandria, Virginia, but the company may have a central office in the city of Washington, D. C., and branch offices in such other places as may be desired, and Gardner L. Boothe is named as agent of the company in the city of Alexandria, on whom all notices and processes may be served."

(2) That defendant has its "principal office or place of

business in the city of Washington, D. C., at No. 300 Pennsylvania avenue," and its business is managed by a board of directors, "the majority of whom are residents of the District of Columbia."

(3) That complainants, as specified later, became subscribers to shares of stock of the kinds described in by-laws 2, 3, and 4 of article 7, and paid money therefor. The bill then recites the shares subscribed for by each complainant. Lorenzo S. Dove has five shares subscribed June 15, 1896. Others show subscriptions for from three to ten shares each, dating from June, 1896, to March, 1897.

(4) The following sections of the general by-laws, made an exhibit to the bill, being important to the understanding of the issues involved, are set out in full:

"Article VII.—*Stock.*—Section 1. Shares may be issued by this company as follows, or under such other rules and regulations as the directors of the company may from time to time deem expedient. Special payments may also be received by the company as the by-laws provide.

"Sec. 2.—Class A.—Shares are issued in this class at a maturity value of $100 each and are payable in monthly instalments of 80 cents each, payable on or before the first business day of each month in advance. The holders of shares in this class will only be required to make ninety-six monthly payments. If the stock has not matured at that time the holder may have the option of ceasing his payments and withdrawing his stock, with the full earnings of the company, or he can continue his shares to maturity. The monthly dues paid on shares in this class are withdrawable at any time after 24 monthly payments have been made, upon giving thirty days' written notice to the secretary of their intention to withdraw, on a printed form furnished by the company. Six per cent. per annum will be allowed for the average time on all stock withdrawn before the expiration of three years. Stock remaining with the company for three years will receive a dividend of seven

per cent. for the average time. After three years, and before maturity, eight per cent. will be allowed.

"Sec. 3.—Class B.—Stock shall be the same as class A, with the exception that it will not be accompanied by insurance and will be issued at 60 cents per share per month.

"Sec. 4.—Class C.—Stock shall be twenty-five cents per month, and shall continue for 168 months; this stock will only be accompanied by insurance when a loan is made in connection with its issue.

"Sec. 5. Prepaid stock may be issued and sold for $50.00 per share. A cash dividend of six per cent. per annum, payable semi-annually, will be paid on the purchase price of this stock, and when the accumulated profits together with the purchase price of the stock equals $100 it will be due and payable. This stock is estimated to mature in eight years, but can be withdrawn at any time after two years from date of issue upon giving sixty days' notice in writing to the secretary on blanks furnished by the company.

"Sec. 6.—Maturity Value.—The maturity or par value of each of the preceding classes of stock shall be one hundred dollars.

"Sec. 7.—Full Paid Income Stock.—This company may issue coupon, full paid, non-assessable income stock at $50 per share, which shall bear seven per cent. interest, payable semi-annually at the central office in Washington, District of Columbia, or through the ordinary commercial channels. This stock shall have ten interest coupons attached. The principal shall be payable on or after five years from date of issue, together with whatever simple interest is due and accrued. Interest will be allowed after maturity by special agreement with the company; this stock will not otherwise participate in the profits of the company. The principal of this stock may be withdrawn after two years from date of issue, on giving sixty days' notice in writing to the central office of the company. The right is reserved to stop the issue of this stock at any time in the discretion of the board of directors.

"Sec. 8.—Special Payments.—Special payments may be accepted by this company. Such payments may be withdrawn at any time upon thirty days' (30) notice to the company. On all sums of $5.00 and over not withdrawn under ninety days from date of deposit six per cent. per annum will be allowed."

(5) Other articles provide fines for non-payment of dues and forfeiture of withdrawal amounts; that representatives of deceased members may withdraw; and that the expense fund shall consist of 16¾ per cent. of the monthly payments, and 10 per cent. of prepaid stock, and of surplus profits after paying the fixed dividends. The remaining money paid in constitutes the "loan fund."

(6) The following article is referred to in the bill as particularly regulating the withdrawal of stock of the kinds specified in sections 2, 3 and 4 of article 7 above set out:

"Article XIV.— *Withdrawals.*—Section 1. Instalment stock may be withdrawn after twenty-four monthly payments have been made thereon by giving thirty days' notice of their intention to withdraw to the secretary, upon a form furnished by the company, when the member shall be entitled to receive the amount of dues paid in to the loan fund of the company, and the company may also return to the withdrawing member his share or proportion of dues contributed to the expense fund of the company, except a withdrawal fee of $1.00 per share and cost of insurance. The expense fund contributions from full paid stock may also be returned to withdrawing members. Interest will be allowed on monthly instalment stock at the rate of six per cent. per annum for the equated time during the first three years from date thereof, and after three years eight per cent. At the expiration of the time for which the stock is written and at its maturity, full net earnings will be allowed: *Provided,* that no stock can be withdrawn until after the expiration of twenty-four calendar months from date of certificate.

"Sec. 2. All applications for withdrawals shall be filed in

the order received, and paid in the order filed, as fast as one-third of the monthly receipts of the loan fund of the company will pay them. The directors, however, may apply the entire income to the payment of withdrawing members' shares whenever it shall be for the best interests of the company."

(7) That subscribers of the class of complainants, having given formal notice, were "entitled to receive the amounts set opposite their names as the withdrawal value of their stock calculated according to the by-laws of said company."

(8) That said values are set forth as claimed by each complainant, and show amounts ranging from $30.68 as due said Lorenzo S. Dove, to $500 due another; and it is alleged that though often demanded payment has been refused to each.

(9) That stock to the extent of $35,000 has been issued and is held by different parties residing for the most part in the District and in Maryland. (Seventy shares of this are held by the complainants.)

(10) That the corporation is insolvent, and owes, to former holders of stock who have given notice of withdrawal, about $5,000, and said amount is increasing through additional notices. It owes about $3,000 for interest upon prepaid stock and trust notes and so forth. It has no cash and its assets consist of depreciated paper and so forth.

(11) That section 27, article 14 of the by-laws requires all applications for withdrawals to be filed in the order received, and paid in the order filed, but instead of complying therewith the directors have arbitrarily paid applicants for withdrawal out of this order.

(12) That there has been misconduct by the secretary in regard to the manner of depositing and keeping the cash of defendant.

(13) That the business of the defendant has been carried on at great loss, and it is unable to make payments, and is threatened with attachments and seizures of its assets and so forth.

(14) That the board of directors of the corporation hold all their meetings at the office in Washington, where are kept all of its books, papers, notes, choses in action, and contracts.

(15) An injunction was prayed restraining the defendant and its officers from removing books, papers, etc., and from disposing of any property pending the suit.

(16) There was another prayer that a receiver be appointed to take possession of the office, books and property of the defendant, to sell the property, collect all claims, and administer its affairs, "to the end that its said business may be discontinued, its debts ascertained, and its assets preserved and distributed equitably to all the parties in interest, and its affairs adjusted according to the rules of the court." There was also the usual prayer for general relief.

2. The defendant, through its president, answered the bill on the next day, practically admitting all the allegations of the bill save those charging improper conduct of the officers in displacing the priorities of the filed notices of withdrawals.

3. On March 20, 1899, Louis C. Barley, the appellant, filed an amended petition, under leave to intervene, alleging the following facts:

(1) That on March 16, 1899, one Elizabeth T. Wallis filed a bill against the defendant in the circuit court for the city of Alexandria, Virginia, alleging in substance:

"That she was a stockholder in said company, meeting all her payments as such from April 1, 1895, until January, 1899; that the company has been losing money, its outstanding liabilities being in excess of its assets, until it was now notoriously insolvent, a receiver having been already appointed in the District of Columbia; that under the constitution of said company she had a right to withdraw her monthly dues after twelve months' payments had been made, upon giving thirty days' written notice to the company; that she had exercised such privilege and applied

15 Ct. App.—29

for the money due upon her stock, but had been informed by the officer in charge that the company did not have and probably never would have any money with which to pay said claim, although they admitted the same to be just and proper; that all of the stockholders had discontinued their monthly payments and the company had no source whatever from which any money could be obtained, and that the company had assets in the State of Virginia which might be dissipated or removed beyond the boundaries of the State unless a receiver were immediately appointed, and praying for the appointment of a receiver and an injunction against said company and its officers, restraining it from further operating its affairs, and that its affairs be wound up and its assets distributed among the parties entitled thereto under the order of this court, and for further relief."

(2) That on March 18, 1899, said court appointed Louis C. Barley receiver of all the property of defendant, restraining its officers from receiving or collecting any of the assets of the corporation, and directing them to turn over to the said receiver all of the property of the corporation of every nature whatsoever, together with the books, papers, vouchers, and all evidence of indebtedness.

(3) That said receiver was also ordered, in distributing such funds of the association as may come into his hands, to show no preference to any stockholder by reason of his residence in the State of Virginia, but to treat all of them wherever residing, upon terms of equality.

(4) (It appears from the allegations of this petition that the Supreme Court of the District had appointed Frank Higgins and John C. Gittings receivers under the prayers of the bill of Lorenzo S. Dove and others, aforesaid; the order of the court, however, is not in the record.)

(5) That said receivers, Higgins and Gittings, have taken possession of the books, papers, evidence of debt, securities and other properties of the defendant, which complainant

has been advised should be delivered to him in order that the affairs of defendant may be administered at the home office of the corporation in Virginia, instead of at its branch office in the District.

(6) An order is prayed requiring the delivery of the property as aforesaid.

4. Receivers Gittings and Higgins, in reply to the foregoing petition, alleged: (1) That the Circuit Court of Alexandria, Virginia, had no authority to make its order aforesaid, because there had been no service upon the defendant corporation in said suit of Elizabeth T. Wallis, " as the defendant was defunct under the laws of Virginia, by reason of not having appointed an attorney upon whom service could have been made under the statute passed by the last legislature of said State, requiring that all corporations chartered under the laws of Virginia and having their main offices outside thereof must appoint an attorney within three months, who is a resident of the State, upon whom service may be had; otherwise the charter becomes forfeited." (2) That defendant has had no attorney as aforesaid in Virginia for more than eighteen months, has never had an office therein, and has not had a stockholders' meeting in said State for more than two years. (3) That the bill of Elizabeth T. Wallis, in the proceeding in Virginia, shows on its face that she was a citizen and resident of Maryland. (4) That she owns but three shares of stock in said corporation; that all her dealings with the same were at its home office in Washington; that she had knowledge that a great number of stockholders and creditors had filed a bill for a receiver for said corporation; and that permanent receivers had been appointed by this court, and in the State of Maryland. (5) That all the assets of every kind and description of said corporation are situated in the District of Columbia and the State of Maryland, with the exception of a $500 real estate loan to a stockholder in Falls Church, Virginia, and the defendant's books show that all

its liabilities are in the District of Columbia and the State of Maryland, with the exception of five stockholders who do not represent more than twenty shares of stock ; and all of the dealings of Virginia stockholders were at the home office in Washington. (6) The bill of Elizabeth T. Wallis is made an exhibit to this answer.

5. The court, on May 17, 1899, dismissed the petition, "upon consideration of the amended and supplemental petition of Louis C. Barley, and the answers of the receivers thereto, and the pleadings and exhibits in this cause."

*Mr. Jackson H. Ralston, Mr. Frederick L. Siddons* and *Mr. Charles C. Carlin* for the appellant :

1. The assets of a corporation are only to be distributed and it affairs can alone be settled by a court of the jurisdiction where the corporation has an actual existence. As to the question of the superior right of the receiver in the home of the corporation to take care of the entire assets, see *Ware* v. *Iron Hall,* 28 Atl. Rep. 1041; *Buswell* v. *Iron Hall,* 36 N. E. Rep. 1065; *Failey* v. *Talbee,* 55 Fed. Rep. 892; *Durward* v. *Jewett,* 15 So. Rep. 386; *Clyde* v. *Railroad Co.,* 56 Fed. Rep. 539; *Baldwin* v. *Hosmer,* 59 N. W. Rep. 432; *Parsons* v. *Insurance Co.,* 31 Fed. Rep. 305. The above cases sustain the theory that there are mutual rights between the stockholders and the corporation which should be adjusted according to the laws of the State with reference to which they were made, and that only the home jurisdiction is capable of making such adjustments.

In other jurisdictions, under certain circumstances, suits may be brought against it by entirely antagonistic creditors, but the rule is uniform that the relations between stockholders and corporations are only to be determined by that jurisdiction where it has a legal existence and where every order which might properly be passed by any court can be promulgated and enforced. *Clark* v. *Life Assn.,* 14 App. D. C. 154; *Mining Co.* v. *Field,* 64 Md. 156; *Wilkins* v. *Thorne,* 60 Md. 258.

2. This is readily to be distinguished from the case of a creditor who desires to have devoted to the payment of his debt money or property to be found within the jurisdiction of the court to which he applies. The purpose of the bill filed in this jurisdiction was infinitely more comprehensive. It was to close at once and forever the financial existence of the corporation against which it was levied. This could not be done. *Silver Mines* v. *Brown*, 58 Fed. Rep. 645. See, also, *Armstrong* v. *Building Assn., ante*, p. 1.

*Mr. D. W. Baker, Mr. Arthur Peter* and *Mr. John C. Gittings* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first contention in support of the decree dismissing the petition of the Virginia receiver is, that the decree of the Circuit Court of Virginia is void, because it was made without service of process upon an authorized agent or attorney of the corporation. This objection comes not from the corporation, but from the receivers appointed in the District of Columbia. Assuming that the question may be raised by them, however, and also that the allegations of their answer are so specific and certain as to warrant the conclusion that there had been no service of process upon any officer, agent or representative, whatsoever, of the corporation in Virginia, we still can not concur in this contention. The corporation was incorporated in Virginia, and confessedly had some assets in that State. Now, where a court has jurisdiction of the subject matter of a suit, service of process upon the defendant therein is not essential to the power to appoint a receiver. Whilst unusual to do so, the power nevertheless exists and may be exercised in a case of emergency; and the existence of such emergency is not subject to collateral inquiry.

2. The next proposition in support of the decree is: That the receiver appointed by the Virginia court can have no

recognition as such in the courts of the District of Colum-
bia. That he has no absolute right is clear. *Booth* v. *Clark,*
17 How. 322, 328. Discussing the powers of a foreign
receiver in that case, Mr. Justice Wayne said : " He has no
extra territorial power of official action; none which the
court appointing him can confer, with ¡authority to enable
him to go into a foreign jurisdiction to take possession of
the debtor's property; none which can give him, upon the
principle of comity, a privilege to sue in a foreign court or
another jurisdiction, as the judgment creditor himself might
have done, where his debtor may be amenable to the tribu-
nal which the creditor may seek." And we do not under-
stand this doctrine to have been impaired by the decision
in *Relfe* v. *Rundle,* 103 U. S. 222, 226. The facts of the two
cases are essentially different. In the latter, the Insurance
Commissioner of the State of Missouri, by the final decree
of a court of that State dissolving a corporation, was declared
invested with all of the corporate property, in strict accord
with an express provision of the charter, a provision of
which all stockholders and creditors were charged with
notice. Becoming, as was said by the court, " the successor
of the corporation, by operation of law," he must be recog-
nized as its successor in litigation.instituted in the State of
Louisiana.

Following the doctrine of *Booth* v. *Clark, supra,* we have
held that the decrees of courts of Virginia and West Vir-
ginia, appointing receivers for a railway company, operat-
ing in those States and in the District of Columbia, could
not operate a transfer of the railway property situated in
the District, or confer upon the receivers authority that must
be respected by its courts. *Howard* v. *C. & O. Rwy. Co.,* 11
App. D. C. 300, 335. It was, however, said : " There may
probably be cases in which the courts of the District would,
upon application and for good cause, recognize the receiver
appointed by the court of a State and permit him to become
a party to litigation affecting the estate or fund or interest

that might be under his management, but that question will not be decided."

The determination of the question being necessary to this case, we are of the opinion that what was said in *Booth* v. *Clark*, construed in the light of the facts before the court, is not to be given such effect, as that, under no circumstances shall a receiver appointed by the court of another jurisdiction have recognition in the courts of this District; and further, that this recognition, which may justly be denied when demanded as a right, may, nevertheless, be sometimes accorded as a privilege on grounds of comity.

There seems to be no controlling reason why the courts of this jurisdiction, exercising a sound discretion in the application of the rules of interstate comity, should not, upon application, permit interventions and suits by receivers appointed by State courts, where important interests of creditors and others would be subserved, and when, to do so, would not contravene the policy of local laws or be detrimental to the interests of domestic creditors.

Whatever may have been the doctrines of earlier days, the decided tendency of later decisions is towards the maintenance of the views above expressed. *Buswell* v. *Supreme Sitting of Iron Hall,* 161 Mass. 224; *T. G. T. Co.* v. *C. B. & Q. RR. Co.,* 123 N. Y. 37, 47; *Baldwin* v. *Hosmer,* 101 Mich. 432; *Durmord* v. *Jewett,* 46 La. Ann. 559; *Gilman* v. *H. R. B. & S. Co.,* 84 Wis. 60; *Patterson* v. *Lynde,* 112 Ill. 196, 207; *Bank* v. *McLeod,* 38 Ohio St. 174; *Castleman* v. *Templeman,* 87 Md. 553; *Day* v. *Postal Tel. Co.,* 66 Md. 354, 370; 20 Am. & Eng. Encyc. L., 242–244, and cases cited.

We think, therefore, that without regard to what the extent of his ultimate recovery might be, the Virginia receiver was rightly permitted to intervene in the proceedings below, and that it was error to dismiss his petition before final decree in the matter of the administration, because he would be entitled, at least, to receive, for transmission to Virginia and administration there, whatever

surplus there may be after the discharge of all costs and claims that may be established here.  *Day* v. *Postal Tel. Co.*, 66 Md. 354, 370.

3. It is quite clear that the immediate direction of the affairs, and the general conduct of the business of the defendant corporation, were intended by its promoters to be located in the District of Columbia.

The managing officers resided in the District of Columbia; the main office was established there; all records, books and papers were kept in that office, and all contracts were there made and all moneys there received and handled.

For reasons best known to themselves, these promoters, though residing in the District of Columbia, and intending to carry on their business there as aforesaid, went into the State of Virginia and secured articles of incorporation in her courts under the provisions of her laws.

In contemplation, then, of strict law, the corporation is a Virginia corporation; and its domicil is in the legal jurisdiction of its said origin, irrespective of the citizenship or residence of its officers and members, and of the place where its business is in fact carried on.  *Barbour* v. *Paige Hotel Co.*, 2 App. D. C. 174.

4. Based on the conclusion that the legal domicil or habitat of the corporation is in the State of Virginia, it is contended, on behalf of the Virginia receiver, that the Supreme Court of the District had no jurisdiction to appoint a receiver of its property in the District, because expressly prohibited by Act of Congress.  Assuming, without conceding, that this is a question which a foreign receiver may be admitted into our courts for the purpose of raising, under the rule of comity before stated, we are of the opinion that the objection is not well taken.

The statutory prohibition is claimed to be found in one of the provisions of an act entitled "An act to provide for the incorporation of trust, loan, mortgage and certain other

corporations in the District of Columbia." Approved October 1, 1890.

This is an elaborate act of thirty-four sections providing not only for the incorporation of corporations of the general class named, but also for their regulation, inspection, and so forth.    26 Stat. 625.

The thirty-third section provides that all corporations engaged in the same kind of business as may be conducted under the incorporation prescribed in the statute, and having their principal places of business in the District, shall comply with the regulations prescribed.

Section 34, which contains the power to alter, amend and repeal, with the saving clause as to liabilities and remedies previously accrued, embodies the following proviso: "That the courts of the District of Columbia shall not have power to appoint any trustee, trustees, guardians, receivers, or other trustee of a fund or property located outside of the District of Columbia, or belonging to a corporation or persons having a legal residence or location outside of said District." *Idem,* 632.

Bearing in mind that the foregoing words occur, not in an act relating to the jurisdiction and procedure of our courts, but in a proviso to an act for the creation of a limited class of corporations, the meaning that is to be given them is far from clear. To give them the scope contended for would be to take away, by implication, a jurisdiction always recognized as belonging to courts of equity, in this District and elsewhere, namely, that of taking possession of property actually within the limits of their jurisdiction, and providing for its temporary administration and final disposition when necessary for the protection of creditors and others having special interests therein.

One effect of such a construction would be to prevent an ancillary administration, even, of property belonging to a corporation or a natural person, "having a legal residence or location outside of said District," notwithstanding it

might be imperatively necessary to the protection of the interests of all concerned, and opposed to none.    And again, it would confer upon natural persons and corporations, doing a large part, or even all of their business in the District, but having "a legal residence or location" elsewhere, a privilege and immunity not enjoyed by the same classes of persons whose legal residence or location is in the District.

A construction that would work such great inconvenience, inequality, and possible injustice ought not to be adopted unless no other can be found reasonably to answer the intention of the lawmakers, even where the act, in which the language occurs, has direct relation to the subject matter claimed to be affected by it.    And for stronger reasons should such a construction be avoided when the particular words occur in an act having relation to an entirely distinct subject matter, and are invoked as repealing another statute, or affecting the settled jurisdiction and practice of the courts, by implication.

Whether the proviso aforesaid is to be limited in its operation to the classes of corporations provided for in the title and body of the act; or whether, more reasonably, perhaps, the disjunctive " or " which connects the first with the last clause of the sentence should be read as if it were *and*, we need not undertake to determine.

What we do decide is, that it could not have been the intention of Congress to take from the courts of the District the jurisdiction to appoint receivers of property actually situated in the District, when authorized by the ordinary practice of courts of equity, and required for the protection of creditors and persons specially interested therein, in all cases where the property may belong to a " corporation or person having a legal residence or location outside of said District."

5. The next contention on behalf of the appellant is, that the court below had no jurisdiction to appoint a receiver of the Virginia corporation, for the purpose of

collecting its assets, ascertaining its liabilities, winding up its affairs and distributing the proceeds of its property among all parties according to their interests, as prayed in the bill.

This contention is founded on the assumption that the complainants are not creditors, but stockholders, and that the object of the bill is to regulate the internal affairs of the corporation, by winding it up completely, adjusting the relations of stockholders to it and to each other, and distributing its assets among the stockholders according to these relations.

If this assumption were sustained by the record in its representation of the relations of the complainants to the corporation, and the purpose of their bill, we should have great difficulty in the proper determination of the question raised.

We have heretofore held that a bill will not lie in this District by a stockholder or member of a corporation of the State of New York, the substantial purpose of which is to inquire into internal administration of its affairs and regulate its course of dealing with its members. *Clark* v. *Mutual Reserve Fund Life Assn.,* 14 App. D. C. 154, 179, 180.

In that case, however, the corporation was not only created under the laws of New York, but its principal office, where its books and papers were kept, was also in that State. From its central office in New York it carried on business through agencies, and received members by contract, in the District of Columbia and in some of the States.

In another case, quite like this in respect of the nature of the corporation and its business, and the contention whether the members engaged in the litigation had standing as stockholders of the corporation or as creditors, it was said : "As we understand it, the controversy before us is not for the final settlement and winding up of the affairs of this association, which, as it is a corporation of the State of Virginia, it may not be competent for the courts of this

District to entertain." *Armstrong* v. *U.S. Building and Loan Asso., ante,* p. 1. In that case it did not appear, nor was it important in view of the manner in which the litigation arose, what were the particular facts concerning the places of carrying on business.

Conceding the general rule in respect of the exercise of jurisdiction in a controversy involving the internal affairs of a foreign corporation, the contention of the appellees is, that the facts of this case afford good ground for an exception.

Whether the general rule, founded, as it is, on considerations of expediency and propriety, as well as on reason, ought to be made to include the case of an association which, for convenience or some ulterior purpose, obtains a certificate of incorporation in another State, and then immediately migrates to this jurisdiction, where there is no statute forbidding or regulating such proceedings, perfects its organization, locates its principal office, carries on its corporate as well as other business, and keeps its officers, its money, its books, papers and records here, presents a question, as we have said, of great difficulty. In the view that we have taken of the relations of the complaining members to the corporation, the decision of this question is not necessary to the complete determination of the matters actually involved. Because of its difficulty and probable importance also to others not engaged in this controversy, we will pass the point until it shall come before us in a manner requiring its settlement.

5. Looking beyond the formal terms of "stock" and "stockholders," used in the by-laws, into the substance of the contract made with subscribers to the operating fund, our view of the relations referred to is, that the complaining subscribers are not stockholders of the corporation in the ordinary legal signification of the term; but are its creditors.

The association is not what is ordinarily considered a corporation having a substantial capital stock divided

among subscribers who contract to pay for the shares taken. It makes no such contracts and issues no certificates of such stock.

Membership is acquired in a very different manner. According to the by-laws, heretofore set out fully, parties are invited to pay in money, in various amounts and ways, to create a fund for the expenses and business of the concern.

What liability, if any, the subscribers under these by-laws might incur as stockholders or individuals, in law or equity, to creditors of the corporation, is a question that is not involved. Clearly, as to the corporation itself and to each other, they were not stockholders in any legal sense. They were mere depositors of money, after the manner of time depositors in the ordinary savings bank, under by-laws forming the contract between them and the corporation, which conferred the right, after the lapse of a stated period, to demand the return of the deposit with its guaranteed interest.

When this period was reached, and the demand for payment was made, as alleged in the bill, the subscribers became nothing more than ordinary creditors of the corporation whose claims had accrued due.

Being creditors, and finding the corporation, with its officers, records, papers, and assets within the jurisdiction of the Supreme Court of the District of Columbia, they had the right to bring their suits and to demand the enforcement of all equitable remedies appropriate to their demands.

6. We are of the opinion, therefore, that the prayer of the Virginia receiver for the recovery of the assets of the corporation before the satisfaction of all the proper demands of creditors who may be before the court, was rightly denied.

The assets of the corporation within the District should be collected and converted into money for equitable distribution among all creditors, no matter where they may reside, who shall seasonably make themselves parties to the proceedings and establish their demands by satisfactory

proofs. If, after the payment of these demands and the expenses of administration, there be any funds remaining, the court may then, in the exercise of a sound discretion, order the same to be delivered to the Virginia receiver, for transmission to the court whence his authority has been derived.

For the reason that the petition of the Virginia receiver was dismissed entirely and standing denied him even for the limited purpose aforesaid, the decree must be reversed, with costs to be taxed as part of the expenses of administration, and the cause remanded for further proceedings not inconsistent with this opinion.            *Reversed.*