## HITZ *v.* JENKS.

------

EQUITY; RECEIVERS; SUPERSEDEAS; DEED OF TRUST SALES; INJUNCTIONS; INADEQUACY OF PRICE.

1. A court which appoints a receiver and causes a fund to accumulate in his hands, has the power to make all proper orders for the conservation of the fund, including an order changing receivers, notwithstanding the pendency of an appeal which operates as a supersedeas.

2. While a sale of property in the hands of a receiver by another person is invalid, when in derogation of the receiver's right of possession and of the court appointing him, a sale of property under a deed of trust by the trustee therein, who is also the receiver of the property, after a decree upholding the validity of the deed of trust and continuing the receivership until a sale thereunder could be made, is neither void nor voidable by reason of the limited possession of the receiver to collect the rents and profits.

3. Where a decree of a special term of the Supreme Court of the

District of Columbia granting an injunction was reversed on appeal by the general term of that court (before the appellate jurisdiction of the general term was abolished) an appeal from the latter decree to the Supreme Court of the United States, although operating as a supersedeas, did not have the effect of reviving the decree of the special term and continuing the injunction.

4. A deed of trust sale against which an injunction—sought by the owner of the property—has been refused, and which the party making it has the right to make, will not be set aside upon the ground that at the time of the sale an appeal by such owner was pending from the decree refusing to enjoin the sale; *distinguishing* Eastern Banking and Trust Co. v. American Ice Co., 14 App. D. C. 304.

5. It will not be held as a matter of law, that the mere requirement in the terms of sale under a deed of trust giving the trustee power to fix the terms of sale, that the purchase money should be paid in cash, was so unreasonable as to require the sale to be vacated; but it is incumbent upon the party seeking to vacate the sale to show its unreasonableness, and proof that in a former attempt to sell which was frustrated by an injunction obtained by such party, the terms of sale offered by the trustee were for part cash and part credit, will not suffice to show that the requirement was unreasonable, especially where it appears that the creditor had loaned his money for three years and by harrassing litigation was compelled to wait much longer for it.

6. Mere inadequacy of price is not sufficient ground upon which to set aside a sale under a deed of trust, unless there are some circumstances of unfairness in the conduct of the sale.

No. 960. Submitted May 4, 1900. Decided June 6, 1900.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to vacate a sale under a deed of trust. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a proceeding in equity instituted in the Supreme Court of the District of Columbia to vacate a sale of certain real estate in this city made under a deed of trust. The proceeding resulted in a decree dismissing the bill of complaint; and from that decree the complainant has appealed.

The real estate involved in the suit is situated on the northeast corner of Ninth and G streets northwest, has a frontage of 80 feet on Ninth street and of 100 feet on G street, and comprises about 8,200 square feet of ground, improved by a number of small brick buildings two stories in height and used for business purposes. This property, together with several other parcels of land, the appellant, Jane C. Hitz, the complainant in the court below, had inherited from her father in the year 1864. At the time at which this inheritance came to her, she was the wife of John Hitz, to whom she had been married in 1856, and to whom she had borne several children. He had thereby become entitled to an inchoate tenancy by the curtesy in her estate, which remained unaffected by the Married Woman's Act of 1869.

In 1872, John Hitz, Charles E. Prentiss, and others organized an institution in this city which they designated as the "German-American Savings Bank." About five years afterwards, in 1877, they converted the institution into a national bank under the national banking law of the United States by the name of the "German-American National Bank," of which John Hitz became president, and Charles E. Prentiss was made cashier. The assets of the savings bank seem to have been transferred to the national bank—among them two promissory notes, dated January 5, 1876, each for the sum of $10,000, executed by one William R. Chipley to the order of one E. P. Halstead, and by the latter indorsed to the savings bank. These notes were secured, or purported to be secured, by a deed of trust of the property involved in this suit executed by John Hitz and the present appellant, Jane C. Hitz, under date of January 26, 1876, to R. B. Donaldson and Charles E. Prentiss, as trustees.

In June, 1877, the German-American National Bank having become financially embarrassed, John Hitz, its president, applied to William P. Jenks, of Philadelphia,

through an agent in Washington, who was the appellee,
Richard W. Tyler, for a loan of $20,000. The loan was
made upon the understanding that it should be secured by
a first mortgage on the property in controversy. Accord-
ingly, the deed of trust to Donaldson and Prentiss was
released on June 16, 1877; and on the same day, by a deed
purporting to be executed by Jane C. Hitz and John Hitz,
her husband, the property was conveyed in fee simple abso-
lute to Sarah L. Crane, who was the sister of Charles E.
Prentiss, for the nominal consideration of $40,000, but in
reality without other consideration than to put the title in
her for the purpose of executing the note to Jenks and giv-
ing the deed of trust upon the property required for the
security of such note. Two days afterwards, on June 18,
1877, Sarah L. Crane executed her promissory note to Jenks
for the sum of $20,000, and secured it by a deed of trust of
even date of the property in controversy to the appellee,
Richard W. Tyler, as trustee. The note was drawn to the
order of John Hitz, was made payable in three years from
date, with interest at the rate of 8 per centum per annum
until paid, and payable quarterly, and was indorsed by
John Hitz to William P. Jenks. The deed of trust was in
the usual form of such instruments in this District. Besides
securing the loan, it provided for the payment of insurance,
taxes and assessments; and, upon any default in the pay-
ment of the note, or of any instalment of interest due thereon,
or of any sum paid by the holder of the notes for the insur-
ance, taxes or assessments, for a sale of the property at pub-
lic auction by the trustee upon such terms and at such
time and place as to him should seem most for the interest
of all the parties concerned, after due notice thereof by
advertisement in the newspapers.

It would seem that John Hitz remained in possession of
the property, and that the interest on the note given to
Jenks was duly paid for some time. But on October 30,
1878, the German-American National Bank failed, and

Benjamin U. Keyser was by the Comptroller of the Currency appointed receiver of it under the national banking act. Soon afterwards, on November 11, 1878, Keyser procured from Sarah L. Crane a conveyance of the equitable estate which remained in her after the deed of trust to Tyler to secure Jenks; and about January 1, 1879, he obtained possession of the property from John Hitz, and proceeded thereafter to collect the rents in his capacity as receiver of the bank appointed by the Comptroller of the Currency. It appears also that default had then been made both in the payment of taxes and in the payment of the interest due to Jenks, and that Tyler, the trustee in the deed of trust, had advertised that for such default he would expose the property for sale under the deed on January 20, 1879.

On January 10, 1879, litigation began. Keyser, on that day, as receiver, filed a bill in equity in the Supreme Court of the District of Columbia, in equity cause No. 6583 on the docket of that court, against John Hitz, Jane C. Hitz, Sarah L. Crane, William P. Jenks, Richard W. Tyler, E. P. Halstead, R. B. Donaldson, Charles E. Prentiss and William R. Chipley, in which he charged that the Chipley notes were unpaid; that they were assets of the bank in his hands; that the deed of release from Donaldson and Prentiss to Mrs. Jane C. Hitz of June 16, 1877, the deed of the same day from Jane C. Hitz and John Hitz, her husband, to Sarah L. Crane, and the deed of June 18, 1877, from Sarah L. Crane to Richard W. Tyler, as trustee, to secure Jenks, were all in fraud of the rights of the bank, and should on that ground be vacated, and that Tyler as trustee under the deed to him had advertised the property for sale; and the prayer of the bill was for an injunction against the proposed sale, that the deeds charged to be fraudulent as to the bank should as to it be vacated, and that the deed of trust to Donaldson and Prentiss, trustees, of January 26, 1876, securing the Chipley notes, should be reinstated, and

be decreed to have priority over that from Crane to Tyler to secure the indebtedness to Jenks, and for general relief.

Upon this bill a preliminary restraining order was issued, and this order was subsequently continued "until the final hearing."

The several defendants named filed answers to the bill of complaint. The defense of Jenks and Tyler was that the former was a *bona fide* purchaser for value and without notice or suspicion of any of the equities set up in the bill, and that he had advanced his money to the bank in good faith for the express purpose of taking up the Chipley notes, discharging their lien on the property and securing the first lien for himself as security for his loan. Sarah L. Crane filed a cross-bill to vacate the conveyance of the equitable title procured from her by Keyser. And Mrs. Jane C. Hitz filed a cross-bill, in which she charged that she had been induced by fraud to execute the deed of conveyance of June 16, 1877, to Sarah L. Crane; and she prayed for the cancelation of that deed and of the subsequent deed of trust from Sarah L. Crane to Tyler, and for an accounting of the rents and profits. In an amended cross-bill subsequently filed she added a further charge of fraudulent alteration of the deed from her to Sarah L. Crane by the addition, after her execution of it, of the name of her husband John Hitz as that of a party grantor.

Answers were duly filed to these several cross-bills; and after the completion of the pleadings and the taking of a large amount of testimony in respect of the issues thereby raised, the cause came on for final hearing at the special term of the Supreme Court of the District. A decree was then rendered, on November 13, 1881, in which it was adjudged (1) that the Chipley note had been paid, and the deed of trust given to Donaldson and Prentiss as trustees to secure them had been properly released; (2) that the deed of June 16, 1877, from Jane C. Hitz and John Hitz, her husband, to Sarah L. Crane, was null and void as to

Jane C. Hitz, and as to her interests in the premises; (3) that
the deed of trust of June 18, 1877, from Sarah L. Crane to
Richard W. Tyler, trustee, to secure Jenks was null and
void as to Jane C. Hitz and her interest in the property,
but valid as to any interest that John Hitz might have
therein by reason of his marital relations with Jane C. Hitz;
and that the injunction previously granted in the cause
should be dissolved in so far as it affected such interest of
John Hitz; (4) that the deed of conveyance from Sarah L.
Crane to Benjamin U. Keyser, receiver of the bank, was
null and void; (5) that Keyser should account for the rents
collected by him, and that he should immediately turn over
the property to Richard W. Tyler, who was appointed
receiver to take possession of the property, manage it, collect
the rents, and pay the taxes, insurance, and other expenses
until the further order of the court.

From this decree of the special term the complainant
Keyser, Jane C. Hitz, and William P. Jenks appealed to
the general term of the court.

The special term subsequently, on December 15, 1881,
modified the decree so far as it referred to the displacement
of Keyser and the appointment of Tyler as receiver, and
provided for the appointment of Keyser as receiver pending
the appeal to the general term. Tyler seems not to have
entered upon the receivership or into the possession of the
property at this time. Keyser remained continuously in
possession, first as receiver appointed by the comptroller
and after the decree as receiver appointed by the court; and
he so remained until the decision of the cause by the general
term.

On December 11, 1883, the general term rendered a
decree in the cause, reversing that of the special term, and
holding that the complainant was not entitled to any relief;
that there was no equity shown in the cause to prevent or
delay the execution and enforcement of the deed of trust of
June 18, 1877, from Sarah L. Crane to Richard W. Tyler;

that the deed of June 16, 1877, from Jane C. Hitz and John Hitz, her husband, to Sarah L. Crane was a valid conveyance not only of the interest of John Hitz, the husband, but also of the estate of Jane C. Hitz in the premises; and that the deed of conveyance of November 11, 1878, from Sarah L. Crane to Benjamin U. Keyser was null and void. It was specially decreed:

First. That the preliminary injunction granted by the special term on February 21, 1879, against the proposed sale by Tyler as trustee should be dissolved; and that the decree of the special term, so far as it held that the deed from Jane C. Hitz and John Hitz to Sarah L. Crane did not convey the estate of Jane C. Hitz, and so far as it retained the injunction against the sale of that estate, should be reversed.

Second. That the deed from Sarah L. Crane to Benjamin U. Keyser and her guaranty of the Chipley notes were null and void.

Third. That Keyser should account for the rents and profits received by him both before and after the decree of the special term; and that the cause should be retained to enable William P. Jenks, who claimed those rents as part of his security, Jane C. Hitz, who claimed them as her separate property, and the complainant Keyser, who claimed them as the holder of judgments against John Hitz, to litigate their respective claims thereto.

Fourth. That the appointment of Keyser as receiver of the court should be revoked, and that Tyler should be appointed receiver to manage the property, collect the rents, and pay the proper charges thereon, until a sale should be had under the deed of trust.

Fifth. That Jane C. Hitz should pay the costs incurred under her amended cross-bill, so far as the rents collected by Keyser, without prejudice to the security of Jenks, were insufficient for that purpose, and that the complainant Keyser should pay all the other costs.

Sixth. That the decree of the special term, so far as it was inconsistent with this decree, should be reversed.

Seventh. That this decree was "without prejudice to the right of any party entitled to the reversion of the said real estate and premises, or any interest in such reversion, to redeem or to make claim, as such party may be advised, to any balance or portion thereof which, upon a sale under the said deed of trust and the satisfaction of the debt secured thereby, with interest and costs, and of the expenses of sale, may remain in the hands of the trustee."

Eighth. That, except so far as the cause was retained as specified, all the bills, original, amended and supplemental, of the complainant, and the cross-bill and amended bills of Jane C. Hitz, should be dismissed.

From this decree an appeal was taken by Jane C. Hitz to the Supreme Court of the United States, and was allowed; and the appeal was entered in the decree itself. Subsequently, on December 31, 1883, a supersedeas bond to accompany the appeal was filed on behalf of Jane.C. Hitz. The other parties seem to have acquiesced in the decree.

Some time in January of 1884, Keyser, in pursuance of the decree of the general term, surrendered the possession of the property to Tyler, as receiver appointed by the court in his place. On March 3, 1884, acting as trustee under the deed of trust to him, Tyler advertised the property for sale; and on March 26, 1884, he sold it to one Seth Caldwell, who was acting in the interest of Jenks, for the sum of $29,200. On the next day Tyler executed a deed of conveyance to Caldwell; and on April 9, 1884, Caldwell conveyed to Jenks. The proceeds of sale seem to have been insufficient to pay the indebtedness to Jenks, there being a deficiency of upwards of $4,000.

The purpose of the present suit is to vacate this sale, and to allow Jane C. Hitz to redeem the property after a proper accounting.

As has been stated, by the decree of December 11, 1883,

the court in general term had retained the cause for the purpose of an accounting by Keyser for the rents and profits collected, or which should have been collected by him; and, the parties, as it seems, having rested in the meantime, on November 13, 1884, in pursuance of the motion of Jane C. Hitz, by her solicitor, the general term referred the cause to the auditor of the court to state Keyser's account, and to report upon the proper distribution of the fund in his hands. In pursuance of this order of reference, the auditor, on March 31, 1885, reported that, prior to December 15, 1881, when he was acting as receiver only under the appointment of the Comptroller of the Currency, Keyser had collected and distributed among the creditors of the bank the sum of $6,175.95; and that subsequently to that date, when he acted as receiver under appointment by the court, he had collected and deposited in the registry of the court, after deducting his commissions and expenses, the sum of $3,963.08, being the net proceeds of his collections down to and including part of January, 1884, at which time he surrendered the receivership to Tyler. The whole amount collected by him and paid over to the creditors of the bank or into the registry of the court was $10,139.03.

This whole fund was claimed by Keyser as an asset of the bank, by Mrs. Jane C. Hitz as her own separate property, and by William P. Jenks as properly applicable, in aid of his security, to the payment of all the taxes and assessments due and in arrears on the property. The auditor made no attempt to disturb the application made by Keyser of the fund collected by him before December 15, 1881, and distributed by him among the creditors of the bank; but, as to the fund collected subsequently to that date, he held that, so much thereof as should be required for the purpose should be applied to the payment of the taxes that had accrued during that period, being the sum of $1,058.89; and that the remainder, after the payment of some costs, being the sum of $2,804.56, should be paid to Mrs. Hitz.

This report of the auditor was rendered to the general term. That court modified the auditor's ruling to some extent, disallowed the claim of Mrs. Hitz, and decreed that the money in the registry of the court, less the costs, should be paid to Tyler as receiver, to be applied by him in the satisfaction of taxes and assessments that had accrued prior to January 1, 1884. In all other respects the auditor's report was affirmed. This was on July 13, 1885.

From this decree also Mrs. Jane C. Hitz appealed to the Supreme Court of the United States, but gave no supersedeas bond, but only a bond for costs.

In the decree of the general term of July 13, 1885, was contained a further order of reference to the auditor to state the account of Tyler as receiver. On August 4, 1885, the auditor filed his report under this order. He found the receiver's receipts to have amounted to $4,573.41; his disbursements, commissions and costs to have been $4,193.37; and the balance in his hands $380.04; of which he said: "The balance remaining in the hands of the receiver I have treated as payable to W. P. Jenks, upon account of the deficiency in the payment of his indebtedness by the sale under the deed of trust."

It is claimed in this suit, on behalf of Mrs. Hitz, that no notice of his proceedings was ever given by the auditor to her or her counsel. It is understood that the balance of $380.04 mentioned was paid by the receiver to Jenks; but this report of the auditor seems never to have been formally acted upon by the court. It is claimed, however, on behalf of the appellees in the present proceeding, to have been confirmed by operation of the rules of the court, which provide that if no exceptions were taken to an auditor's report within one month from the date of its being filed, the report should stand confirmed.

Mrs. Hitz had taken two appeals to the Supreme Court of the United States, one from the decree of December 11, 1883, which adjudicated the principal rights of the parties;

and the other, from the decree of July 13, 1885, which distributed the fund received by Keyser. Both appeals were heard together by the Supreme Court; and on November 14, 1887, that court finally affirmed both decrees. 123 U. S. 297. The mandate, however, was not filed in the Supreme Court of the District until February 11, 1889. Reference was then had by the latter court to settle the matter of costs, which had been left open; and the special auditor's report on that subject was confirmed by the court on December 1, 1890. This terminated the original litigation begun on January 10, 1879, nearly twelve years before.

The present proceeding was instituted by Mrs. Jane C. Hitz, one of the principal parties to the original proceedings, by the filing of a bill in equity in the Supreme Court of the District of Columbia on November 6, 1890. Jenks had died in the meantime, in October, 1886; and his title and estate in the premises had devolved under his will on his children, the appellees John Storey Jenks, William Henry Jenks, and Rachel Jenks Randolph. These, with Sarah L. Crane and Richard W. Tyler, both of whom were also parties to the former litigation, were made defendants to the bill of complaint, the purpose and prayer of which were that the sale made by Tyler as trustee on March 26, 1884, should be vacated; that the complainant should be allowed to redeem the property, and that there should be an accounting for the rents and profits. The specific grounds stated in the bill, on which the sale was attacked, were eight in number, as follows:

(1st) That, at the time of sale, the property was in the possession of Tyler as receiver appointed by the court to hold and manage it.

(2d) Because an appeal had been taken and a supersedeas bond given.

(3d) Because, without reference to the supersedeas, the trustee could not properly sell the property while the appeal

was pending and the rights of the parties were in process of determination in the courts.

(4th) Because the terms of sale were unreasonable.

(5th) Because there were no bids and bidders were discouraged.

(6th) Because the pending appeal to the Supreme Court of the United States was a cloud on the title.

(7th) Because it was the understanding at the sale that it was made only to transfer title.

(8th) Because the price for which the property was sold was grossly inadequate.

The bill also repeats much of the old litigation and apparently seeks to revive it.

After answers filed denying under oath all equities of the bill and replications filed, voluminous testimony was taken, part of which relates to the manner in which the sale was conducted and the question of the adequacy of price, and the remainder consisted mainly of the record of the preceding litigation, or of such portions of it as were deemed pertinent.

On November 28, 1899, upon hearing, the court below dismissed the bill, with costs; and from the decree of dismissal the complainant has appealed.

*Mr. A. S. Worthington* and *Mr. J. S. Flannery* for the appellant:

1. The sale was absolutely void because at the time of sale the property was in possession of the court through its receiver. *Goddard* v. *Ordway,* 94 U. S. 672. Without reference to supersedeas, a sale by a third party of property in the custody of the court through its receiver is absolutely void. *Wiswall* v. *Sampson,* 14 How. 52; *Peale* v. *Phipps,* 14 How. 367; *Heidritter* v. *Oilcloth Co.,* 112 U. S. 294; *McLaughlin* v. *Janney,* 6 Grat. 609; *Day* v. *Telegraph Co.,* 66 Md. 354; 2 Dan. Ch. Pl. & Pr. (3d Am. Ed.), 1431, 1433. When the sale was made the case was pending in the

Supreme Court of the United States, and it was for that court to decide whether the special term was right in holding that the property belonged to complainant, or, as held by the general term, that the legal title was in the trustee under the deed of trust with a right on his part to sell it to pay the debt due Jenks. Until that question was decided, any sale of the land by the court pending the appeal and supersedeas would have been void; much more was a sale by a third party a nullity. See, also, *Ferguson* v. *Dent*, 29 Fed. Rep. 1; 2 Dan. Ch. Pl. & Pr. 1447; Beach on Receivers, Sec. 796. By the statute regulating supersedeas on appeal to the Supreme Court, no order was needed directing the receiver to hold the property pending the appeal. The law directs the court below and its receiver to do nothing to change the status of the property. *Ferguson* v. *Dent*, 29 Fed. Rep. 1; *Goddard* v. *Ordway*, 94 U. S. 673.

2. The order and decree of the special term enjoining Tyler, as trustee, from selling the property was in force at the time the sale was made, and that of itself rendered the sale void. The precise question involved has never been determined by the Supreme Court of the United States or by this court, the case nearest in its facts to the one at bar being *Railroad Co.* v. *Bechmer*, 169 U. S. 644. In the following cases, however, it has been expressly held that supersedeas of an order dissolving an injunction continues the injunction: *Railroad Co.* v. *Railroad Co.*, 94 Ky. 478; *Bressler* v. *McCune*, 56 Ill. 475; *Kimball* v. *Alcorn*, 45 Miss. 145; *Penrice* v. *Wallace*, 37 Miss. 184; *Williams* v. *Ponus*, 48 Tex. 141; *Railway Co.* v. *Railway Co.*, 68 Tex. 98; *Lewis* v. *Leahey*, 14 Mo. App. 564; *Turner* v. *Scott*, 5 Rand. (Va.), 332; *Yocom* v. *Moore*, 4 Bibb (Ky.), 221. When a decree is mandatory in effect it is stayed by a supersedeas even in those jurisdictions in which the statute is construed not to authorize the suspension of an ordinary injunction by a supersedeas. *Dewey* v. *Superior Court*, 81 Cal. 64, 68; *Stewart* v. *Superior Court*, 100 Cal. 543; *Schwarz* v. *Superior Court*, 111 Cal. 106;

*Railroad Co.* v. *Oakland*, 58 Fed. Rep. 50. If the decree of the general term is to be construed as permitting the sale by the trustee, the doing of the act by virtue of such permission would change the status just as much as though it had been done by the express order of the court. If the decree authorized the sale, then it was superseded; if it did not authorize a sale, then any attempt to interfere with the property in the possession of the receiver would be simply void.

3. If not wholly void, in any event the sale is voidable and should be set aside for the following reasons: (1) The terms of sale were unreasonable; (2) an appeal was pending in the Supreme Court of the United States, and for this reason alone the action of the trustee in forcing the sale can not be sustained. *Ryan* v. *MacDonald*, 125 Ill. 91; *Wiswall* v. *Sampson*, 14 How. 52; *Trust & Banking Co.* v. *Ice Co.*, 14 App. D. C. 301; (3) the sale was a sham and bidders were discouraged, and (4) the price for which the property was sold was inadequate.

*Mr. W. D. Davidge* and *Mr. W. D. Davidge, Jr.,* for the appellees:

1. The operative effect of the decree granting or dissolving an injunction is not suspended by an appeal and supersedeas bond. *Hovey* v. *McDonald*, 109 U. S. 150; *Slaughterhouse Cases*, 10 Wall. 273; *Leonard* v. *Ozark Land Co.*, 115 U. S. 465; *Knox Co.* v. *Harshman*, 132 U. S. 14; 2 High on Injunctions (2d Ed.), Secs. 1709, 1431, 1536; 1 Beach on Injunctions, Sec. 400. Where an injunction has been dissolved by a final decree, it can only be revived by a new exercise of judicial power. The court in general term had the inherent power to suspend by injunction the operation of the decree during the pendency of the appeal, and the Supreme Court of the United States, in session at the time of the sale, had the same power. *Leonard* v. *Land Co.*, 115 U. S. 468. The appellant had only to apply for relief, if

there were merit in her application, and the reason why she did not apply can only be referred to the utter want of merit.

2. The contention that Tyler held the custody and possession of the property as receiver, and hence was disabled from making the sale, is without any foundation. The decree on its face contemplates a sale, and expressly provides that the office of receiver should continue "until a sale shall be made under the deed of trust." It further dissolves the injunction, if any, the only obstacle to the sale, and by revoking the appointment of Keyser and substituting Tyler prepared the way for an early sale.

Mr. Justice MORRIS delivered the opinion of the Court:

The first and principal contention on behalf of the appellant is that the sale complained of was absolutely void, because at the time of the sale the property was in the possession of the court through its receiver.

The verbal criticism is probably unimportant, that a sale can not properly be characterized as absolutely void, which has been made by the person authorized to make it in full accordance with the power conferred on him, when the ground of invalidity is some extraneous matter to be shown by evidence; and such would be the pendency of an injunction against the sale or the possession of the property by the receiver of a court. A sale may be voidable in such a case; but it would scarcely be correct to regard it as absolutely void. We do not understand, however, that the distinction is of any importance in the determination of the question before us. For the sale may be vacated, whether it is void or only voidable.

In this connection, also, it may be stated, that the suggestion, that the appeal taken to the Supreme Court of the United States from the decree of December 11, 1883, together with the supersedeas bond accompanying it, operated to prevent the receiver Keyser from delivering

the possession of the property to the receiver Tyler appointed in his place, requires no serious consideration from us; for it is no more than a suggestion, and is not seriously insisted on in argument. It can not well be maintained as a legal proposition. A change of receivers is a very different thing from the discharge of the receivership. To some extent the latter may be suspended by appeal and supersedeas; but it can not be that the court, in consequence of appeal and supersedeas, is deprived of the power of changing its own officer and of conserving the fund by the means which it deems best for the purpose. It is well settled law that the court which appoints a receiver and causes a fund to accumulate in his hands, may continue to make all proper orders for the conservation of the fund, notwithstanding the appeal. *Goddard* v. *Ordway,* 94 U. S. 672. If at the time of the decree Keyser had died, or resigned, or declined further to discharge the duties of the receivership, beyond question it would have been competent for the court, notwithstanding the appeal, to appoint another person in his place; and it is not apparent why a similar substitution could not be made for any good cause in the discretion of the court. But, as we have intimated, this change of receivers is not important in the determination of the substantial question in the case. This question is, whether, while the property in controversy was in the possession of the receiver, Tyler, it was competent for Tyler, as trustee, to sell it under the deed of trust?

Various cases are cited to show that a sale of property by another person, while that property is in the possession of a court by its receiver, is invalid. *Wiswall* v. *Sampson,* 14 How. 52; *Peale* v. *Phipps,* 14 How. 367; *Goddard* v. *Ordway,* 94 U. S. 672; *Heidritter* v. *Elizabeth Oil Cloth Co.,* 112 U. S. 294; *McLaughlin* v. *Janney,* 6 Grattan (Va.), 609; *Day* v. *Postal Telegraph Co.,* 66 Md. 354. The doctrine of these cases, if it ever was controverted, is, of course, no longer open to question. But we are unable to see that it is

applicable to the case before us, where the receiver was in fact authorized to sell the property, as trustee. In all the cases cited, and in all other cases where the doctrine has been applied, the sale made or action taken, which was held to be illegal and invalid, was had or taken in derogation of the right of possession vested in the receiver and of the authority of the court which appointed him, and tended to impede the control and thwart the disposition of the property by the court. But no such condition arose in this case. The court had intervened in the first instance to prevent a sale until the rights of the parties could be adjudicated, and it appointed a receiver to preserve the property intact and to collect the rents and profits. It finally found that there was no good ground of equity for further interference with the enforcement of the deed of trust, and accordingly dissolved its injunction and permitted the trustee to proceed with the execution of the deed, retaining its receiver only until such time as the trustee was prepared to sell. The duration of the receivership was expressly limited to continue only until a sale should be had under the deed of trust. It did not authorize a sale by the trustee in express terms; for no such authority was necessary, since the authority under the deed of trust was ample; but it removed the obstacle which it had itself interposed to the exercise of the power of the trustee, and by the removal of that obstacle virtually authorized the sale. The sale, therefore, was not in derogation of the authority of the court, but in precise accordance with it; and it is very plain that it was contemplated in the decree of the court that it would speedily take place.

In fact, the continuance of the receiver in his position was in aid of the contemplated sale and in subordination to it. It is well settled law, that deeds of trust of the nature of that here involved, and which are the usual forms of mortgage with us, do not of themselves create a lien upon the rents and profits antecedent to a sale under

their provisions, and that the mortgagees have no right whatever to such rents and profits. But it is also well settled law that when a mortgagee has sought to enforce his security, and is prevented from so doing by the intervention of the court, an equitable lien upon such intervening rents and profits is created in his favor, if he finally prevails in the suit, and the proceeds of sale are insufficient to satisfy the amount of the indebtedness due to him. He himself is entitled to have such a receiver, not to defeat his sale, but in aid of it and in subordination to it. And such undoubtedly was the purpose of the appointment of Tyler as receiver in this case. It was developed in the sequel that there was a deficiency of assets from the proceeds of sale, and it was decreed that Tyler's collections made by him as receiver should be applied to the satisfaction of that deficiency. It is very clear to us that a sale is neither void nor voidable by reason of the limited possession of a receiver to collect the rents and profits, when the continuance of such possession is expressly made to depend upon the occurrence of such sale.

The case of *Goddard* v. *Ordway*, 94 U. S. 693, which is principally relied on by the appellant in this connection, presented a very different condition. There, after appeal taken and supersedeas bond given, it was sought in the court below to discharge the receiver and to require him to turn over to the successful party in that court the money previously collected by him as such receiver. This was in the nature of execution of the decree, and this the Supreme Court held should not be done. But that plainly was a very different case from the present. It was not pretended in that case that the receiver should still go on collecting, as though, in consequence of the appeal and supersedeas, the decree had not terminated the further exercise of his functions. There is a very great difference between the conservation of a fund already collected in order to await a final decision on appeal, and the continuance of further

collections which might have been made, if the decree had been different.

We are of opinion, therefore, that the contention of the appellant in this regard is not well founded in law, and is not supported by any adjudicated case.

2. The appellant's second proposition is, that the decree or order of the special term of the Supreme Court of the District, enjoining Tyler as trustee from selling the property, was in force at the time the sale was made, and that this fact of itself invalidated the sale.

This proposition is based upon the theory that the general term of the Supreme Court of the District of Columbia was an intermediate appellate tribunal between the special term of that court and the Supreme Court of the United States, and that the superseding of the judgment or decree of an intermediate appellate tribunal by an appeal to a higher tribunal leaves the original judgment or decree in force until the final determination of the last appeal. But this theory, as applicable to the present case, is untenable. The foundation for it is wanting, since in the case of *Metropolitan RR. Co.* v. *Moore,* 121 U. S. 558, it was distinctly decided by the Supreme Court of the United States that the general term and the special term of the Supreme Court of the District was one and the same court, and that an " appeal from the special to the general term was not an appeal from one court to another, but simply a step in the progress of the cause during its pendency in the same court." Whatever, therefore, might be the law, when an intermediate appellate tribunal has reversed the decree of a lower court, and its own mandate is stayed by an appeal, with supersedeas, to a higher appellate tribunal, certainly a decree of the Supreme Court of the District of Columbia in special term could not have been revived as against a decree of that same court in general term reversing it by the mere process of appeal, with supersedeas, to the Supreme Court of the United States. As well might it be argued that an injunction *pendente lite*

dissolved by the decree at final hearing could be revived by appeal from that decree,—which, although it seems to be the practice in some of our States, was not the practice of the English chancery, has never been the practice in this District, and has never been admitted into the Federal jurisprudence. *Slaughter House Cases,* 10 Wall. 273; *Hovey* v. *McDonald,* 109 U. S. 150; *Leonard* v. *Ozark Land Co.,* 115 U. S. 465; *Knox Co.* v. *Harshman,* 132 U. S. 14.

. The decree of the Supreme Court of the District of Columbia in general term was the final decision of that court in the case, and it took the place of all preceding orders and decrees of that court. Upon its rendition, the decree of the special term passed out of the case, and it could not be reviewed by any action of the parties.

There seems to have been some question whether there was any valid supersedeas upon the appeal of Mrs. Hitz to the Supreme Court of the United States; but that question has not been raised before us, and the appeal and supersedeas have been treated as valid for all the purposes for which they could legitimately have had effect. But, it is very clear to us that, under the law, they could have no further force than to stay execution of the decree in so far as the decree required execution in order to be practically effective. But, as was said by the Supreme Court of the United States, in the case of *Hovey* v. *McDonald, supra,* " a decree itself, without further proceedings, may have an intrinsic effect which can only be suspended by an affirmative order, either of the court which makes the decree or of the appellate tribunal." And again in the same case, it is said: " Neither a decree for an injunction nor a decree dissolving an injunction is suspended in its effect by an appeal, though all the requisites for a supersedeas are complied with." We think that this statement of the law by our court of last resort is decisive of the question here raised.

3. The appellant's third proposition is, that the sale, if

not wholly void under the two. previous contentions, is void-able and should be set aside for four several reasons; which are these: (1) That the terms of sale were unreasonable; (2) that an appeal was pending to the Supreme Court of the United States; (3) that the sale was a sham and bidders were discouraged; (4) that the price for which the property was sold was inadequate.

The second of these reasons, the pendency of an appeal to the Supreme Court of the United States, is but another form of the proposition which has already been considered. It is not apparent upon what rule of equity or justice a sale, against which an injunction has been refused and which the party making it has a perfect right to make, can after-wards be set aside on the ground that an appeal has been taken. This proposition would give to an appeal all the force of the injunction which has been refused by the court. We find nothing in any of the cases cited that would jus-tify any such proposition. The case of the *Eastern Banking and Trust Co.* v. *American Ice Company*, 14 App. D. C. 304, in this court, is supposed by the appellant to give some color to the contention. But we do not so understand that case. There the controversy was over the foreclosure of a mort-gage on some wharf property in the city of Washington. There had been some buildings on the property, but they had been destroyed by fire and nothing was left for the mortgage to operate on except the ground. That ground was included in an area of land claimed by the United States in a suit in the Supreme Court of the District of Colum-bia, that of the *United States* v. *Morris and others*, wherein it is to be presumed the parties to this cause were also parties, and wherein it had been decided by that court that the title was in the United States, and not in any of the parties. The case was then pending in the Supreme Court of the United States on appeal; and subsequently by that court the decision was affirmed which adjudged the title to be in

the United States. The case of the *Eastern Trust and Bank-ing Co.* v. *American Ice Company* came before us while that appeal was pending. We reversed the decree of the lower court on other grounds, and remanded the cause for fur-ther proceedings, with the suggestion, inasmuch as the proceedings were wholly within the control of the court, that the sale, if sale should be decreed, should not be allowed until after the decision of the Supreme Court of the United States in the case of *Morris* v. *United States.* In this latter case it had already been adjudged that the United States, and not either of the parties to the suit before us, were the owners of the property in controversy. There was, therefore, as matters then stood, no property whatever to sell; and the only hope that there would be property to sell lay in the possibility that the decision in the case of *Morris* v. *United States* might be reversed. This was plainly a speculative contingency. But that is not the present case. Here there was no question as to the ownership. The validity of the deed of trust, it is true, had been contested by the present appellant; but it had been adjudged against her contention. And if there was doubt, thereafter, in regard to the respective rights of the parties, it was doubt which the appellant herself had created by her appeal. It would be a dangerous doctrine to hold that a mortgagor, by the mere institution of a suit, or by the taking of an appeal in a suit wherein he has been defeated, can render invalid a sale otherwise perfectly valid. We can not think that such a proposition as that here advanced is sound in law.

The other grounds, on which it is sought to invalidate the sale, refer rather to matters of fact than to matters of law. The first of them is that the terms of sale were unrea-sonable, in the requirement that the purchase money should all be paid in cash. This is undoubtedly an unusual requirement so far as sales in recent times are concerned; but it is not unprecedented, and we can not say that it is of

itself unreasonable. Theoretically, all sales are presumed to be for cash; and the giving of credit is an indulgence, and not a right. The trustee had been given the power to fix the terms of sale; and while the abuse of such power will be closely watched by a court of equity and relief given against it, we can not hold, as a rule of law, apart from the circumstances of the case, that the requirement of cash, instead of cash and credit, is unreasonable. No case is cited wherein any such rule has been held, and we do not think that any can be cited. Nor was there anything in the circumstances of the case to show that the requirement was in itself unreasonable. Reference is made to the fact that, when the trustee first advertised the property for sale, about the time of the commencement of the litigation, in 1879, his terms had been for part cash and part credit; and this seems to be relied on to some extent as showing the unreasonableness of the requirement for the later advertisement and sale in 1884. But there had been five years of harrassing litigation, wholly unfounded in justice so far as the creditor Jenks was concerned, as was held by the concurrent decisions of the Supreme Court of the District of Columbia and the Supreme Court of the United States; and the creditor had long been deprived of his money and of all return from it. He was entitled to have it all back, and not merely a part, and to be postponed for the residue for other years to come. When one lends his money for three years, it does not mean that he will be compelled to wait for five, or seven years, for its repayment. He is entitled to have the contract performed as it has been made.

We do not mean to be understood as holding that a requirement that the whole purchase money in such cases should be paid in cash would be reasonable under all circumstances. Parties may have contracted with reference to a prevalent usage; or there may be circumstances which would make such a requirement harsh and oppressive. But when such a requirement is distinctly within the

authority conferred on the trustee, as it is here, we think that it is incumbent on the person who would attack it, to show its unreasonableness by competent testimony. Nothing of that kind is attempted in the present case.

In the next place, it is objected that the sale was a sham and that bidders were discouraged. We find no evidence whatever in the record to sustain this charge. There are some vague statements by unnamed and unauthorized persons that the sale was intended merely "to pass title," whatever that may mean; but we find no evidence that would indicate in the remotest degree that the sale was not conducted in good faith.

Finally, it is alleged that the price for which the property was sold was inadequate. But mere inadequacy of price, if it exists, as it has been well settled, is no reason for the vacation of a sale, unless there are some circumstances of unfairness in the conduct of the sale. If it could be shown that the inadequacy existed; that it was occasioned by the trustee's requirement that the purchase money should all be paid in cash; that bidders were thereby discouraged, and that these conditions were caused or contemplated by the trustee or the creditor Jenks, then undoubtedly there might be ground for the intervention of a court of equity. But we are not satisfied that the testimony has established the fact of inadequacy of price, in all events inadequacy to such an extent as that a court of equity would be justified in interfering.

On this point five witnesses were called on behalf of the appellant, who testified variously that the property at the time of the sale in 1884, was worth from about $4.50 to about $8 a square foot, or from about $38,000 to $65,000 in all. But they were all men of very limited experience in real estate, and had no basis whatever of other sales in the nighborhood upon which to base their opinion. On the other hand, some sixteen or seventeen witnesses, including some of the most prominent and experienced real estate

agents in the city of Washington, were called on behalf of the appellees; and they all testified with one accord that the sum which the property brought at the sale, that is, $29,200, which was a little upwards of $3.50 a square foot, was a full and fair price for it at the time. Some would not have given so much, and some thought that $3 a square foot was all that it was worth, and all based their opinions on other sales in the neighborhood both on F street and on G street, at or about the same time. Some of them testified that they had gone to the sale, and had bid for the property, but that they had been unwilling to go as high as the figure for which it was sold. The preponderance of testimony is so overwhelmingly in favor of the appellees on this point that we do not deem it necessary to give it further consideration. It is very clear to us that the allegation of inadequacy of price is wholly unsustained by the testimony.

The appellant, in our opinion, has not, as complainant in the court below, proved her case; and being of that opinion, we regard it as unnecessary for us to examine the defenses of *res judicata* and *laches* set up by the appellees in defense of the suit,—the one based on the assumption that the validity of the sale in question was involved in the decree of the Supreme Court of the District rendered on July 13, 1885, and in the decision of the Supreme Court of the United States affirming that decree; and the other founded on the lapse of time between the date of the sale (March 26, 1884), and the time of the institution of the present suit (November 6, 1890), a period of more than six years and seven months, during which Jenks and one or two other persons connected with the transaction had died, but during the greater part of which time, it is true, the litigation was pending.

We conclude that no error has been shown in the decree of the Supreme Court of the District of Columbia, now appealed from, and that this decree should be *affirmed, with costs. And it is so ordered.*